Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, August 24, 2015 12:29:32 PM

# IN THE UNITED STATED BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALEX RAHMI, | ) | Case No. 12-bk-200 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 14-ap-41 |
| | ) | |
| ALEX RAHMI, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The United States Trustee ("UST") seeks summary judgment on Count III and Count X of her ten-count complaint to deny Alex Rahmi (the "Debtor") a discharge under 11 U.S.C. § 727(a)(2)(B). The Debtor, in essence, does not contest the allegations of the UST's complaint or motion for summary judgment but, rather, blames the UST for his alleged misconduct.[1]

For the reasons stated herein, the court will grant summary judgment to the UST on Count III of her complaint.

---

[1] The Debtor is acting *pro se* in this proceeding as he as throughout his various individual bankruptcy cases. Courts have consistently held that a pro se litigant's pleadings are to be read more liberally than pleadings drafted by an attorney, *Patchell v. Option One Mortgage Corp.*, 336 B.R. 1, 12 (Bankr. D.Mass. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1971)), and given fair and meaningful consideration. *In re Laredo*, 334 B.R. 401, 408 (Bankr. N.D.Ill. 2005) (citation omitted). The court has thus construed the Debtor's pleadings here liberally and given them meaningful consideration.

1

# I. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw,* 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

# II. BACKGROUND

On February 21, 2012, the Debtor filed his bankruptcy case under Chapter 11. It is the fourth personal case he has filed since January 2011, and he also caused the bankruptcy filings of three entities of which he is, respectively, a shareholder, partner, and member—Alex Chevrolet, Inc. ("Alex"), Bon-Air Partnership ("Bon-Air"), and Universal Enterprises of West Virginia,

LLC ("Universal")—before filing personally.  Additionally, he caused the Chapter 7 filing of Uniwest Sanitary Systems ("Uniwest") in December 2014, an entity in which he is one of two partners.

On March 28, 2012, the Debtor filed, among other things, his Statement of Financial Affairs ("SOFA") and Schedules A and B.  On his SOFA, the only lawsuit that the Debtor disclosed in response to Question 4 was a foreclosure proceeding instituted by Sovereign Bank.  He also disclosed only Alex Chevrolet in response to Question 18, which asks a debtor to disclose certain information regarding businesses in which the debtor serves, among other roles, as an officer, partner, managing executive, or sole proprietor within six years prepetition.  On Schedule A – Real Property, the Debtor disclosed only his residence at 638 Marlow Road, Charles Town, West Virginia.  On Schedule B – Personal Property, the Debtor disclosed various personal property, including $25,000 in a bank account and an interest in a partnership valued at $800,000.  He did not, however, disclose his interest in any causes of action.

On October 22, 2012, the Debtor filed his first Chapter 11 disclosure statement (the "Disclosure Statement").  In the Disclosure Statement, the Debtor identified "Palais Des Arts" as an avoidance action that was filed or expected to be filed in his case for which he anticipated recovering up to $500,000.  He also identified that action on Exhibit E attached to his Disclosure Statement.  During a January 11, 2013 hearing regarding the Disclosure Statement, the Debtor informed the court and parties that Palais Des Arts was a non-profit entity that he formed in Canada, and that the action identified in his Disclosure Statement was pending in a Canadian court (the "Canadian Litigation").  Because the Debtor disclosed his interest in Palais Des Arts and the Canadian Litigation for the first time in conjunction with his Disclosure Statement, the UST noted that she would endeavor to learn more about those interests and report to the court at a subsequent hearing.  At the conclusion of the January 11 hearing, the court urged the Debtor to get counsel to assist him in navigating through Chapter 11 and implored him to examine the interests and claims that he held to ensure that he fully disclosed them on the relevant bankruptcy schedules.

On February 13, 2013, the court held a telephonic hearing primarily to hear from the UST regarding what she had learned about the Canadian Litigation since the hearing in January.  Among other things, the UST reported that the attorney prosecuting the Canadian Litigation on the Debtor's behalf, although he had not been employed by the estate, predicted at that time that

3

the litigation would not be resolved until late 2013 or sometime in 2014. At the conclusion of the hearing, the Debtor noted that he'd be filing a motion to amend his disclosure statement, but the court told him he did not need to seek approval in that regard and could file an amended disclosure statement as he deemed appropriate. Thereafter, activity in the case was relatively stagnant until the Debtor filed an amended disclosure statement on May 20, 2013, which the court set for hearing on July 25, 2013.

At that hearing, the UST expressed concerns regarding the Debtor's failure to timely file monthly operating reports—he was filing one every other month—and his failure to disclose a source of funds to be used to fund the plan since he was not employed; he previously proposed using anticipated proceeds from litigation. The court ordered that it would disapprove the Debtor's amended disclosure statement and schedule a status conference if the Debtor failed to adequately move his case toward confirmation. Although there was certain activity in the case, including the Debtor's appeal of the court's order granting a Motion for Relief from the Automatic Stay, the court did not conduct a hearing regarding the status of the Debtor's case until February 18, 2014, after the Debtor filed an Application to Employ Counsel to represent him in the Orphans Court for Montgomery County, Maryland regarding litigation arising out of the administration of his deceased father's estate.

During that hearing, the Debtor disclosed, again for the first time, that he had settled the Canadian Litigation in the fall of 2013 for approximately $170,000 (the "Settlement Proceeds"). Ten days later, the UST filed a motion under § 1112(b) to convert the Debtor's case to one under Chapter 7 based upon, among other things, the Debtor's conduct regarding the settlement of the Canadian Litigation—settling the litigation without court approval and failing to adequately disclose and account for the Settlement Proceeds. Not only did the Debtor fail to disclose and account for the proceeds, he disposed of a substantial portion thereof in the months after he received them. In that regard, the Debtor had failed to timely file monthly operating reports, including from September 2013 to January 2014.

On the same day that the UST moved to convert this case to one under Chapter 7, the Debtor moved for an extension of time to file missing operating reports. The court granted the Debtor an extension of time in that regard and ordered that he file all missing operating reports by March 12, 2014. On March 12, 2014, the Debtor filed a single monthly operating report that purported to cover the months of September 2013 through February 2014. That report indicated

the Debtor's receipt of the Settlement Proceeds but did not contain specific documentation in that regard. In fact, the Debtor attached to his monthly operating report an online transaction history for his debtor-in-possession ("DIP") account. That history, however, was incomplete; it started on September 10, 2013, with an account balance of $51,214.17. In that regard, the court noted the following in conjunction with its disposition of the UST's Motion to Convert:

> Indeed . . . the bank transaction statements, which accompanied the operating reports from September of 2013 through January of 2014[,] began with the date of September 10 of 2013 . . . . The specific dates that related to [the Debtor's] receipt of the proceeds on September 3 and the disposition with respect to some of those proceeds as reflected on bank statements on September 4 were missing from materials submitted by [the Debtor] in conjunction with the operating reports from September through January. In fact, the only way that the Court has learned of the specifics with respect to the receipt of those proceeds on the 3rd of September and a disposition of those proceeds on the 4th of September is by virtue of bank statements, which the [UST] obtained independently of Mr. Rahmi . . . .

Ex. 1, p. 17, UST's Motion for Summary Judgment.

Ultimately, the court converted this case to one under Chapter 7. In finding cause to convert the case, the court made the following determination regarding the Debtor's conduct vis-à-vis the Settlement Proceeds:

> The court finds this lack of disclosure by [the Debtor] to be an intentional omission further demonstrating that [the Debtor] has a distinct lack of appreciation for the transparency required by the bankruptcy process, and it demonstrates to the Court that the intention of [the Debtor] to hide the details of his financial affairs, particularly as it relates to the receipt and disbursement of the [S]ettlement [P]roceeds.

*Id*. at p. 18. To bolster its decision to convert the Debtor's case to one under Chapter 7, the court also found that in November 2011 the Debtor converted and disposed of a tax refund payable to Bon-Air but did not report the receipt of the refund in response to Question 2 on his SOFA, which requires the disclosure of all income received by the debtor during the two years prepetition, when he filed his case in February 2012. *Id*. at 22-24. Neither did the Debtor disclose his interest in two parcels of real property located in New York; one in Watertown, NY (the "Watertown Property") and another in Denmark, NY (the "Denmark Property").

Regarding the Watertown Property, the court found that the property, which the Debtor disclosed as part of his previous Chapter 11 case, was involuntarily transferred to the City of Watertown on September 20, 2011, but was repurchased by the Debtor after he filed this case.

5

*Id.* at 25-26. Notably, the Debtor neither disclosed the Watertown Property in response to Question 5 of his SOFA, which requires him to list all property that had been repossessed within one year prepetition. The Debtor neither sought court approval to repurchase the property postpetition nor amended his Schedule A to reflect ownership of the property. Regarding the Denmark Property, the record reflects that the Debtor owned the property as of the petition date in this case, that he failed to disclose his ownership interest therein, and that he sold the property postpetition without disclosing the property or sale proceeds. *Id.* at 27. The court noted that the Debtor's conduct in that regard showed "a lack of candor by [the Debtor] with respect to fully disclosing the assets in which he has an interest and account for their disposition, many times disposition occurring without proper authorization by this Court or notice to parties entitled to it." Ex. 1, p. 28, UST's Motion for Summary Judgment. The court thus converted the Debtor's case to one under Chapter 7. Notably, the Debtor's interest in Uniwest remained undisclosed up until the Debtor caused the filing of its Chapter 7 voluntary petition in December 2014.

### III. DISCUSSION

The UST asserts that she is entitled to summary judgment on Count III of her complaint to deny the Debtor a discharge under § 727(a)(2)(B) based upon the Debtor's receipt of, and failure to disclose and account for, at least $178,000[2] in Settlement Proceeds from the Canadian Litigation. In support of her motion in that regard, the UST relies upon the court's previous finding that the Debtor concealed the Settlement Proceeds with intent "to hide the details of his financial affairs." In his opposition, the Debtor simply contends that the court should excuse his conduct regarding his receipt and dissipation of the settlement proceeds because the UST "had not imposed guidelines or restrictions for the settlement process . . . ." But for a single paragraph in his "Addition to Memorandum in Support of Defendant's Opposition to United States Trustee's Motion for Summary Judgment," the Debtor's opposition to the UST's amended complaint and motion for summary judgment is wholly unresponsive to the allegations contained therein.[3]

---

[2] Although the Debtor initially indicated in February 2014 that he settled the litigation for approximately $170,000, the court later learned that the Debtor received precisely $178,060.57 from his counsel in the Canadian Litigation.

[3] The court recognizes the Debtor's status as a *pro se* litigant and has thus construed his pleadings liberally. As the UST notes in her reply to the Debtor's response, however, the Debtor

6

It is a long-standing principle and expression that Chapter 7 of the Bankruptcy Code permits honest but unfortunate debtors to discharge their pre-petition personal liability for debts. 11 U.S.C. § 727(a) and (b). "However, certain provisions of § 727 prohibit discharge for those who play fast and loose with their assets or with the reality of their affairs." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) (internal quotation omitted). "Section 727(a)(2) serves to deny a discharge when the debtor attempts to prevent the collection of his debts by concealing or disposing of assets." *UST v. Sieber (In re Sieber)*, 489 B.R. 531, 545 (Bankr.D.Md. 2013) (citing omitted). It provides that "[t]he court shall grant the debtor a discharge, unless—the debtor, with the intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B).

Thus a plaintiff must prove the following four elements by a preponderance of the evidence to bar a debtor's discharge under § 727(a)(2)(B): (1) the transfer or concealment of property, (2) belonging to the estate, (3) after the date of the filing of the petition, (4) with the intent to hinder, delay, or defraud a creditor or officer of the estate. *Sieber*, 489 B.R. at 545 (citation omitted). Regarding a debtor's intent, courts may infer such intent from circumstantial evidence, *see In re Johnson*, 82 B.R. 801, 805 (Bankr.E.D.N.C. 1988) ("Because debtors are

---

fails to adequately contest the UST's allegations against him. Specifically, rather than contest the allegations in the UST's motion for summary judgment, the Debtor devotes his response, as he did in various other pleadings he filed with the court, to alleging misconduct on the part of various entities and individuals, including Douglas Kilmer, a former trial attorney for the UST. Notably, the conduct of which the Debtor complains occurred, at least in part, in cases other than his personal case; specifically, the cases of Alex, Universal, and Bon-Air. The Debtor did, however, file a surreply in an attempt to rectify his failure to address the UST's allegations. Even still, the Debtor's opposition to the UST's motion for summary judgment is largely unresponsive to the allegations against him. And to the extent the Debtor is attempting by his pleadings to allege misconduct against the UST or other entities and individuals, the court cannot recognize those allegations as constituting a defense to the claims asserted against him by the UST; nor can the court merely transmute his allegations into conventional counterclaims given the potential complexities that would attend such a transmogrification. For instance, the conduct complained of occurred primarily in bankruptcy cases other than his personal case. In that regard, the Debtor is unable to assert claims on behalf of Alex, Universal, and Bon-Air because the purported causes of action belong to those entities and not to the Debtor. Moreover, because the Debtor is in a case under Chapter 7 of the Bankruptcy Code, the Chapter 7 trustee owns any rights in causes of action that may be personal to the Debtor. The court is thus left to determine whether the Debtor's single paragraph in response to the UST's motion for summary judgment creates a genuine dispute as to any material fact relevant to his personal discharge.

7

unlikely to acknowledge a fraudulent intent, the court may infer such intent from circumstantial evidence including a pattern of nondisclosure."), and often rely on certain indicia of fraud to determine whether the debtor acted with a fraudulent intent. *Sieber*, 489 B.R. at 545 (citation omitted). Notably, a debtor's pattern of concealment and nondisclosure, along with his reckless disregard for the truth, can support a finding that he acted with a fraudulent intent. *Id.* (quoting *Lafarge N.A., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 816 (Bankr.D.Md. 2012); *see In re Parker*, 531 B.R. 103, 107 (Bankr.E.D.N.C. 2015) (citing *In re Ingle*, 70 B.R. 979, 983 (Bankr.E.D.N.C. 1987)).

Here, there is no doubt that the Debtor both concealed and transferred property of his bankruptcy estate postpetition. In that regard, the Debtor failed to disclose his interest in the Canadian Litigation until several months postpetition. And it is undisputed that the Debtor's interest therein, among other undisclosed assets, was property of his bankruptcy estate. But what's more, he settled that litigation in the fall of 2013 without seeking court approval, and he failed to disclose his receipt of the Settlement Proceeds until at least February 18, 2014. By that time, however, he had also disposed of, or transferred from his DIP account, a substantial portion of the proceeds. There is thus no doubt that the Debtor transferred and concealed assets of his bankruptcy estate postpetition; namely, the Settlement Proceeds. Especially significant in this regard is the court's previous finding in conjunction with the UST's Motion to Convert that the Debtor intentionally hid the details regarding the receipt and disbursement of the Settlement Proceeds in conjunction with the dilatory filing of his operating report on March 12, 2014. Notably, his submission of a supporting bank statement was found to be particularly duplicitous in that it had been manipulated to eliminate entries for the receipt and disbursement of funds on the 3rd and 4th of September 2013, thereby obfuscating his disclosure and making, among other things, the tracing of proceeds more difficult; clearly showing continuing deception on the Debtor's part. Those entries were finally accounted for only after the UST independently obtained the complete bank statement. *See supra* p. 5. Thus, even after the discovery in February 2014 of the Debtor's failures in his duties as a DIP regarding the settlement proceeds,[4] one month later, in conjunction with a cumulative operating report, he continued to exhibit a

---

[4] Duties of a DIP include being accountable for all property received and furnishing information, as is requested, concerning the estate and its administration. *See* 11 U.S.C. §§ 1107(a), 1106(a)(1), and 704(a)(2) and (7).

pattern of obfuscation and deception, and an acute failure in his duties regarding disclosure, which is at the heart of the bankruptcy system. *See In re Alvarez*, No. 11-32087, 2012 WL 1865499, at *3 (Bankr.W.D.N.C. May 22, 2012) ("The bankruptcy system is largely dependent on voluntary, self-disclosure of the debtor's finances.").

The court thus concludes that the Debtor concealed and disposed of the Settlement Proceeds with the requisite intent to hinder, delay, or defraud his creditors or an officer of the bankruptcy estate. The circumstantial evidence supporting this finding is overwhelming, particularly because the Debtor's failure to disclose his receipt and disposition of the Settlement Proceeds is but one instance of the Debtor's pervasive nondisclosure in this bankruptcy case as detailed earlier, regarding, among other things, property in Watertown and Denmark, New York, and his interest in Uniwest. *Id.* at pp. 5-6. The court thus finds that the Debtor's conduct shows a pattern of concealment and nondisclosure sufficient to support the conclusion that, regarding his conduct in conjunction with the settlement and disposition of the proceeds of the Canadian Litigation, he acted with the intent to hinder, delay, and defraud his creditors and this court. Thus the UST has met her burden in showing entitlement to summary judgment under § 727(a)(2)(B).

To the extent that the Debtor continues to plead ignorance, the court finds his argument meritless and disingenuous. The record is replete with admonishments from the court to the Debtor regarding the importance of disclosure in bankruptcy. Despite the court's admonitions to the Debtor in that regard, he continued to withhold information from his creditors and the bankruptcy estate not only while his case was one under Chapter 11 but also after the court converted it to one under Chapter 7. In summary, based upon the material facts not in dispute, the UST is entitled to summary judgment as a matter of law as to the Debtor's conduct regarding the Canadian Litigation.[5]

### IV. CONCLUSION

Based on the foregoing, and consistent with Fed. R. Bankr. P. 7058, the court will enter a separate order granting summary judgment to the UST.

---

[5] The court, based upon its decision to grant the UST summary judgment on Count III of her complaint, need not address the UST's alternative basis for summary judgment regarding the Debtor's conduct vis-à-vis his interest in Uniwest.